WMCA, INC., ET AL. v. LOMENZO, SECRETARY OF STATE OF NEW YORK, ET AL.

No. 85. Decided October 11, 1965.

*Leo A. Larkin, Jack B. Weinstein, Leonard B. Sand, Max Gross, Morris Handel* and *George H. P. Dwight* for appellants.

*Louis J. Lefkowitz,* Attorney General of New York, *Thomas E. Dewey, Leonard Joseph* and *Malcolm H. Bell* for appellees.

PER CURIAM.

The motion to affirm is granted and the judgment is affirmed.

MR. JUSTICE FORTAS took no part in the consideration or decision of this case.

MR. JUSTICE HARLAN, concurring.*

The Court today disposes summarily of four New York reapportionment cases; it retains jurisdiction of a fifth, *Lomenzo* v. *WMCA, Inc.,* No. 81, which raises substantial questions similar to some of those involved in a set of Hawaii reapportionment cases, *Burns* v. *Richardson,* No. 318; *Cravalho* v. *Richardson,* No. 323; and *Abe* v. *Richardson,* No. 409, with respect to which probable

---

*[This opinion applies also to No. 191, *Travia et al.* v. *Lomenzo, Secretary of State of New York, et al.;* No. 319, *Rockefeller, Governor of New York, et al.* v. *Orans et al.;* and No. 449, *Screvane, President of City Council of City of New York, et al.* v. *Lomenzo, Secretary of State of New York, et al.*]

jurisdiction has been noted (*post*, p. 807). Because these cryptic dispositions risk bewildering the New York legislators and courts, let alone those of other States, I believe it fitting to elucidate my understanding of these dispositions, all of which I join on the premises herein indicated. The need for clarification is particularly desirable because, through dismissal of the appeal in *Rockefeller* v. *Orans*, No. 319, and affirmance in *WMCA, Inc.* v. *Lomenzo*, No. 85, this Court signifies its approval of two decisions concerning the same apportionment plan, one of which (No. 85) found it acceptable and the other of which (No. 319) struck it down.

The New York Legislature adopted an apportionment plan, known as "Plan A," [1] to comply with an order of a three-judge District Court, dated July 27, 1964, requiring the State to enact "a valid apportionment scheme that is in compliance with the XIV Amendment of the United States Constitution and which shall be implemented so as to effect the election of Members of the Legislature at the election in November, 1965, Members so elected to hold office for a term of one year ending December 31, 1966 . . . ." [2]

In *WMCA, Inc.* v. *Lomenzo*, 238 F. Supp. 916, the three-judge court found that Plan A satisfied this order;

---

[1] New York Laws 1964, c. 976. The New York Legislature passed three successive amendments to c. 976: New York Laws 1964, cc. 977–978 ("Plan B"), c. 979 ("Plan C"), and c. 981 ("Plan D"). The District Court in the same opinion that found Plan A constitutional, *WMCA, Inc.* v. *Lomenzo*, 238 F. Supp. 916, also held that Plans B, C, and D did not meet the requirements of the Fourteenth Amendment, as interpreted in *Reynolds* v. *Sims*, 377 U. S. 533, and *WMCA, Inc.* v. *Lomenzo*, 377 U. S. 633. This Court is retaining jurisdiction in the appeal from those determinations, *Lomenzo* v. *WMCA, Inc.*, No. 81.

[2] Civil No. 61–1559, U. S. D. C. S. D. N. Y. The order of the District Court was affirmed summarily by this Court, *Hughes* v. *WMCA, Inc.*, 379 U. S. 694, MR. JUSTICE CLARK and I dissenting.

6

in so doing it rejected contentions that apportioning on a basis of *citizen* population violates the Federal Constitution, and that partisan "gerrymandering" may be subject to federal constitutional attack under the Fourteenth Amendment. In affirming this decision, this Court necessarily affirms these two eminently correct principles.

Quite evidently Plan A was seen by the District Court, and is also viewed by this Court, as but a temporary measure. In holding the plan federally acceptable for the purpose of electing a special 1966 Legislature, the District Court explicitly abstained from dealing with challenges to the plan under the State Constitution. Judge Waterman also noted that although Plan A met federal constitutional requirements, "Of course, the ultimate fitness of the scheme for their needs and purposes is for the people of the State of New York, themselves, to decide, and not for this court to mandate." 238 F. Supp., at 927.

Subsequent to the decision below in *WMCA*, the New York Court of Appeals held Plan A (as well as Plans B, C, and D) unconstitutional as a matter of state law.[3]  In now dismissing for lack of a substantial federal question the appeal from that decision (*Rockefeller* v. *Orans,* No. 319) insofar as it may bear upon any apportionment plan effective after the expiration of the 1966 New York Legislature, I take it that the Court is asserting that any final apportionment plan must comport with state as well as

---

[3] *In re Orans,* 15 N. Y. 2d 339, 206 N. E. 2d 854. The Court of Appeals held Plans A, B, C, and D invalid under Art. III, § 2, of the New York Constitution which states, "The assembly shall consist of one hundred and fifty members." All four plans provided for larger assemblies: Plan A, 165 assemblymen, c. 976, § 301; Plan B, 180 assemblymen, c. 977, § 301; Plan C, 186 assemblymen (having a total of 165 votes), c. 979, § 301; Plan D, 174 assemblymen (having a total of 150 votes), c. 981, § 301.

federal constitutional requirements.[4]   So much of the dis-
position in No. 319 I join without reservation.   In dis-
missing, without more, the remaining part of that appeal,
I take it that the Court is simply reflecting its affirmances
in Nos. 191 and 449 (*post,* pp. 9, 11), whereby it puts its
stamp of approval on the District Court's use of Plan A,
though invalid under the New York Constitution, as a
temporary measure.   I acquiesce in this aspect of the
disposition because of factors to which I advert below.

   The Court affirms as well two appeals, *Travia* v.
*Lomenzo,* No. 191, and *Screvane* v. *Lomenzo,* No. 449,
from the District Court's order of May 24, 1965, which
specifically ordered a November 1965 special election
under Plan A after the New York Court of Appeals had
already declared that plan to be in violation of the State
Constitution.[5]   On June 1, 1965, this Court denied a
motion to stay the order and to accelerate the appeal,
*Travia* v. *Lomenzo,* 381 U. S. 431.   In dissent I noted
that a federal court order that a state election be held
under a plan declared invalid under the State Constitu-
tion by the highest court of that State surely presented
issues of far-reaching importance for the smooth func-
tioning of our federal system, which were deserving of
plenary consideration by this Court.   I would have accel-
erated the appeal, and but for the action of this Court
in denying the stay which was sought I would have
granted the further application for such a stay that was

----

   [4] The Court's dismissal of this part of the appeal in No. 319 neces-
sarily approves the Court of Appeals' holding that from the stand-
point of federal law the 150-member requirement of the New York
Constitution was not an integral part of the apportionment scheme
invalidated in *WMCA, Inc.* v. *Lomenzo,* 377 U. S. 633.
   [5] The May 24, 1965, order of the District Court was in oral form.
A written opinion was handed down on July 13, 1965, Civil No.
61–1559, embodying the May order.

made to me during the summer. *Travia* v. *Lomenzo,* No. 191, Memorandum of MR. JUSTICE HARLAN, July 16, 1965, 86 S. Ct. 7. I now acquiesce in the affirmance [6] as I can see no satisfactory way to heal, at this juncture, the wounds to federal-state relations caused by the District Court's order without inflicting even greater ones.

The upshot of what is done today is, then, to suspend New York's 150-member constitutional provision for the one-year duration of the 1966 Legislature, a result to which I subscribe only under the compulsion of what has gone before in this Court.

---

[6] A decision on the merits by this Court is unavoidable. The appeal from the three-judge District Court is brought here under 28 U. S. C. § 1253 (1964 ed.), and I do not believe this case, or *a fortiori* any of the other New York reapportionment cases presently before the Court, is moot. Surely if this Court now held that the District Court erred in ordering the election under Plan A, it has the power, for example, to enjoin the November 2 election and to order the District Court to arrange for yet another election and for other appropriate temporary reapportionment relief. The very great difficulties implicit in affording any such relief at this late stage go to the question of its desirability, not to the mootness of the underlying action.